# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ORLANDO J. EVITT, )
)
            Petitioner, )
)
vs. )        **Case No. 14-CV-288-JHP-FHM**
)
TRACY MCCOLLUM, Warden,[1] )
)
            Respondent. )

## OPINION AND ORDER

This is a habeas corpus action. Petitioner, a state inmate appearing pro se, filed his petition (Dkt. # 5) on June 27, 2014. Respondent filed a response to the petition (Dkt. # 14), along with the state court records necessary for resolution of Petitioner's claims (Dkt. ## 14, 15). Petitioner did not file a response. For the reasons discussed below, the petition for writ of habeas corpus is denied.

## *BACKGROUND*

Petitioner Orlando J. Evitt challenges his convictions entered in Washington County District Court, Case Nos. CF-2005-531, CF-2010-191, and CM-2010-349. Factual and procedural backgrounds of the convictions are described below.

### A. Case No. CF-2005-531

The record reflects that, on August 24, 2006, in Case No. CF-2005-531, Petitioner pled no contest to Possession of Marijuana With Intent to Distribute (Count 1), and Possession of

---

[1]Petitioner is in custody at North Fork Correctional Center where Tracy McCollum is Warden. Pursuant to Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*, the proper party respondent in this matter is Tracy McCollum, Warden. Therefore, Tracy McCollum, Warden, is substituted in place of Robert C. Patton, Director, as party respondent. The Clerk of Court shall note the substitution on the record.

Methamphetamine (Count 2). On December 14, 2006, the court formally sentenced Petitioner to five (5) years deferred on each count, with the sentences running consecutively.

On May 10, 2010, the State filed a motion to accelerate deferred judgment based on the allegation that Petitioner had violated the terms of his deferred sentences by committing subsequent crimes, as charged in Washington County District Court, Case Nos. CF-2010-191, CM-2010-349, and CM-2010-350. After Petitioner was convicted by a jury of the crimes charged in Case Nos. CF-2010-191 and CM-2010-349,[2] the trial judge combined a hearing on the motion to accelerate deferred sentences with formal sentencing in the cases heard by a jury. The trial judge granted the motion to accelerate filed in Case No. CF-2005-531 and sentenced Petitioner to eight (8) years on each count, to be served consecutively to each other but concurrently with sentences entered in Case Nos. CF-2010-191 and CM-2010-349, discussed in more detail below.

Petitioner appealed the acceleration of his deferred sentences to the Oklahoma Court of Criminal Appeals (OCCA). See Dkt. # 8-1. Represented by counsel, Petitioner raised one proposition of error, as follows:

> The decision to accelerate was an abuse of discretion because it was based on incorrect convictions in the deferment judgment and sentence.

See Dkt. # 14-4 at 2.[3] In an unpublished summary opinion, filed October 2, 2012, in Case No. F-2011-0442, the OCCA rejected Petitioner's claims and affirmed the district court's acceleration of Petitioner's deferred sentences. See Dkt. # 14-6. Nothing in the record suggests that Petitioner

---

[2]At the beginning of Petitioner's jury trial, the State dismissed the misdemeanor charge of domestic assault and battery, filed in CM-2010-350, because the prosecuting witness failed to appear. See Dkt. # 15-3, Tr. Vol. II at 6-7; Dkt. # 14-3 at 1 n.1.

[3]With the exception of the trial transcripts, citations to the record and documents filed in this case reference the Court's ECF pagination.

sought certiorari review in the United States Supreme Court. Respondent states that Petitioner has not sought post-conviction relief in any case. See Dkt. # 14 at 2, ¶ 5.

On June 27, 2014, Petitioner filed his federal habeas corpus petition (Dkt. # 5). As to his convictions and sentence entered in Case No. CF-2005-531, Petitioner alleges that:

Ground 1:     Abuse of discretion – accelerate.

See Dkt. # 5 at 3. In response to the petition, Respondent alleges that this ground for relief is time barred. See Dkt. # 14.

**B. Case Nos. CF-2010-191 and CM-2010-349**

As to Petitioner's convictions entered in Case Nos. CF-2010-191 and CM-2010-349, the record demonstrates that, during the early morning hours of May 7, 2010, at the Brookhaven apartments located in Bartlesville, Oklahoma, sixteen (16) year old A.G. left his apartment, # 228, and went to Petitioner's apartment, # 129, to collect money owed to him for a previous drug sale. A physical altercation erupted between A.G. and Petitioner. A.G. walked away from the fight and headed back to his apartment. As A.G. proceeded to cross the courtyard, he heard someone behind him. A.G. turned, saw Petitioner with a gun in his hand, and heard Petitioner "cock" the gun. A.G. ran into his apartment and locked and dead bolted the door. Three of A.G.'s friends and A.G.'s two younger sisters were also present in apartment # 228. One of A.G.'s friends tried to help A.G. hold the door closed, but Petitioner kicked the door until he broke the frame. A.G. saw Petitioner's hand holding the gun come through the broken door. A.G. ran to his bedroom where another friend had sought cover. Petitioner fired four (4) gunshots into the apartment, then entered the apartment and proceeded to A.G.'s bedroom. A.G. and his friend subdued Petitioner and took possession of the gun. One of Petitioner's friends arrived and helped him leave because the police were on the way.

When the police arrived, A.G.'s friend relinquished possession of the gun to Officer Darrell Sweet of the Bartlesville Police Department. Officer Sweet then went to apartment # 129 where he found Petitioner lying on his back on the living room floor. Officer Sweet described Petitioner as "heavily intoxicated" and observed "a lot of blood" on Petitioner's face. Petitioner declined medical treatment. He was arrested and transported to jail.

As a result of those events, Petitioner was charged in Washington County District Court, Case No. CF-2010-191, with First Degree Burglary (Count 1) and Possession of a Firearm, After Former Conviction of a Felony (Count 2), and in Case No. CM-2010-349, with Reckless Conduct With a Firearm. At the conclusion of trial, Petitioner's jury found him guilty as charged and recommended sentences of seven (7) years imprisonment for Count 1, four (4) years imprisonment for Count 2, and six (6) months in jail for the misdemeanor charge. The trial judge sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to be served consecutively. During trial proceedings, Petitioner was represented by attorney Jim Conatser.

Petitioner appealed his convictions to the OCCA. Represented by attorney Katrina Conrad-Legler, Petitioner raised seven (7) propositions of error, as follows:

Proposition 1: The trial court denied Mr. Evitt's Sixth Amendment rights by not allowing Appellant to represent himself pro se.

Proposition 2: Mr. Evitt has been subjected to multiple punishments, which requires the dismissal of Count II in Case No. CF-2010-191 or Count I in CM-2010-349.

Proposition 3: Mr. Evitt's Fourteenth Amendment due process rights pursuant to the United States Constitution were violated when the trial court failed to properly instruct the jury.

Proposition 4: Mr. Evitt was denied effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution and Article II, Sections 6, 7, and 20 of the Oklahoma Constitution.

Proposition 5:  Prosecutorial misconduct deprived Mr. Evitt of a fair trial and caused the jury to render excessive sentences.

Proposition 6:  Mr. Evitt's sentences are excessive.

Proposition 7:  The cumulative effect of all the errors addressed above deprived Mr. Evitt of a fair trial and sentencing.

See Dkt. # 14-1 at 2-3.  On May 2, 2013, in an unpublished summary opinion filed in Case No. F-2011-440, the OCCA denied relief and affirmed the Judgment and Sentence of the trial court.  See Dkt. # 14-3.  Petitioner did not file a petition for writ of certiorari at the United States Supreme Court nor did he seek post-conviction relief in the state courts.

In his federal petition for writ of habeas corpus, Petitioner raises the following grounds of error as to his convictions in Case Nos. CF-2010-191 and CM-2010-349:

Ground 2:      Denial of self representation/denied effective assistance of trial counsel.

Ground 3:      Prosecutorial misconduct/excessive sentences.

Ground 4:      Cumulative errors.

See Dkt. # 5 at 13, 31, 41.  Respondent filed a response (Dkt. # 14) to the petition and asserts that Petitioner is not entitled to relief under 28 U.S.C. § 2254(d).

## *ANALYSIS*

### A.  Challenge to accelerated sentences in Case No. CF-2005-531 is time-barred

In Ground 1, Petitioner claims that the trial judge abused his discretion in granting the State's motion to accelerate deferred sentences in Case No. CF-2005-531.  See Dkt. # 5 at 3.  Respondent argues that this claim is time barred.  See Dkt. # 14 at 10.  The Court agrees with Respondent.  The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted April 24, 1996, established a one-year limitations period for habeas corpus petitions as follows:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). In general, the limitations period begins to run from the date on which a prisoner's conviction becomes final, but can also commence under the terms of § 2244(d)(1)(B), (C), and (D). In addition, the limitations period is tolled or suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period. § 2244(d)(2).

Under § 2244(d)(1)(A), the acceleration of Petitioner's deferred sentences became final on December 31, 2012, after the OCCA affirmed the state district court's ruling on October 2, 2012, and the 90 day time period for filing a petition for writ of certiorari in the United States Supreme Court had lapsed. See Locke v. Saffle, 237 F.3d 1269, 1273 (10th Cir. 2001). As a result, Petitioner's one-year limitations clock began to run on January 2, 2013, see Harris v. Dinwiddie, 642 F.3d 902, 907 n.6 (10th Cir. 2011), and, absent a tolling event, a federal petition for writ of habeas corpus filed after January 2, 2014, would be untimely. See United States v. Hurst, 322 F.3d 1256 (10th Cir. 2003) (applying Fed. R. Civ. P. 6(a) to calculate AEDPA deadline). Petitioner filed his

petition on June 27, 2014, almost six (6) months beyond the deadline. Unless Petitioner is entitled to statutory or equitable tolling, Ground 1 of his petition appears to be untimely.

Nothing in the record suggests that Petitioner is entitled to statutory tolling of the one-year period. Petitioner did not seek post-conviction or other collateral relief in the state courts. As a result, Petitioner is not entitled to tolling under 28 U.S.C. § 2244(d)(2).

Petitioner is not entitled to equitable tolling. The statute of limitations defined in 28 U.S.C. § 2244(d) is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645, 649 (2010); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998). Equitable tolling applies only in "rare and exceptional circumstances." Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000) (citing Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)). A petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (internal quotation marks and citation omitted); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000); Miller, 141 F.3d at 978. A petitioner's burden in making this demonstration is a heavy one: a court will apply equitable tolling only if a petitioner is able to "show specific facts to support his claim of extraordinary circumstances and due diligence." Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (internal quotation marks and citation omitted).

Petitioner did not file a reply to the response and nothing in the petition suggests a basis for equitable tolling. Therefore, Petitioner is not entitled to equitable tolling. Petitioner's Ground 1 claim challenging the acceleration of his deferred sentences is time barred and shall be dismissed with prejudice as barred by the statute of limitations.

**B. Claims challenging CF-2010-191 and CM-2010-349**

### 1. Exhaustion/Evidentiary Hearing

Before addressing Petitioner's claims, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner presented his claims to the OCCA on direct appeal and they are exhausted.

The Court also finds that Petitioner is not entitled to an evidentiary hearing.  See Cullen v. Pinholster, 563 U.S. 170, 184-85 (2011); Williams v. Taylor, 529 U.S. 420 (2000).

### 2. Claims adjudicated by the OCCA (Grounds 2, 3, 4)

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 102-03 (2011); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  An unreasonable application by the state courts is "not merely wrong; even 'clear error' will

not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)).  The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  Id. (quoting Richter, 562 U.S. at 103); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).  Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d).  Richter, 562 U.S. at 98; Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

Here, the OCCA addressed Petitioner's claims raised in Grounds 2, 3, and 4 on the merits.  Therefore, the Court will review those claims under the standards of § 2254(d).

### a. Denial of self representation (part of Ground 2)

As part of his second ground of error, Petitioner claims that the trial judge denied his request to proceed pro se in violation of his rights under the Sixth Amendment.  See Dkt. # 5 at 13.  In support of this claim, Petitioner cites his brief filed on direct appeal where he argued that the trial judge violated his Sixth Amendment right of self-representation when Petitioner was not allowed to represent himself after having disagreements with his attorney.  See Dkt. # 14-1 at 15-21.  Petitioner also alleged that he "made a timely and reasonable request to represent himself prior to his preliminary hearing, at his preliminary hearing, and then at his jury trial."  Id. at 20.  The OCCA denied relief on this claim, finding as follows:

> Evitt's statements to the trial judge that he was "willing" to represent himself was not an unequivocal expression of a desire to represent himself, nor was the request timely, coming as it did during the second day of trial. *See Fitzgerald v. State*, 1998 OK CR 68, ¶ 6, 972 P.2d 1157, 1162 ("A criminal defendant has the absolute right to counsel, but he may waive that right if he clearly and unequivocally declares his wish to proceed *pro se*."); *Grant v. State*, 2009 OK CR 11, ¶ 15, 205 P.3d 1, 10 ("[I]t is incumbent on the accused to timely and clearly decline that right [to self-representation]; if his initial request is not heeded, he must renew it before trial");

> *United States v. Mayes*, 917 F.2d 457, 462 (10th Cir. 1990) ("the right to self-representation is unqualified only if demanded *before* trial"). Evitt's Sixth Amendment right to self-representation was not violated. The trial court judge did not abuse his discretion by not allowing Evitt to proceed *pro se*. *See Gregory v. State*, 1981 OK CR 56, ¶ 11, 628 P.2d 384, 387 (finding no error where trial court refused defendant's request for self-representation where defendant "did not unequivocally express desire to represent himself . . . and request was not timely made, coming as it did after the jury was selected and sworn"); *Day v. State*, 1980 OK CR 94, ¶ 8, 620 P.2d 1318, 1320 (finding no abuse of discretion for denying defendant's request to proceed *pro se* where defendant did not assert right before trial began and judge determined defendant had been adequately represented up until that point); *see also*, *State v. Thompson*, 950 P.2d 1176, 1178 (Ariz. 1997) (determining it was not an abuse of discretion to deny motion to proceed *pro se* coupled with request for continuance made day of trial).

See Dkt. # 14-3 at 2-3.

The Supreme Court has unequivocally held that the Sixth Amendment "grants to the accused personally the right to make his defense." Faretta v. California, 422 U.S. 806, 819 (1975); see also United States v. Mackovich, 209 F.3d 1227, 1236 (10th Cir. 2000) ("A criminal defendant has a constitutional and a statutory right to self-representation."). To invoke the right, a criminal defendant must (1) "'clearly and unequivocally' assert his intention to represent himself," (2) "make this assertion in a timely fashion," and (3) "'knowingly and intelligently' relinquish the benefits of representation by counsel." Mackovich, 209 F.3d at 1236 (citations omitted). Further, the right to self-representation is not absolute. United States v. Akers, 215 F.3d 1089, 1097 (10th Cir. 2000). In certain instances, "a court may terminate the right to self-representation, or the defendant may waive it, even after he has unequivocally asserted it." Munkus v. Furlong, 170 F.3d 980, 984 (10th Cir. 1999) (citation omitted).

In Faretta, the defendant requested that he be allowed to represent himself "weeks before trial." Faretta, 422 U.S. at 835. In this case, nothing in the record suggests that Petitioner made a timely request to proceed pro se. Instead, the record reflects that, during the preliminary hearing,

10

defense counsel advised the Court that "we're not on the same page . . . . We're just not compatible, and I don't think I can effectively . . . represent him . . . any further." See Dkt. # 15-1, Tr. Prelim. Hr'g at 18. Petitioner offered his opinion that "[w]e're just not prepared as a team." Id. at 19. The trial judge allowed Petitioner and defense counsel additional time to confer. Id. at 21. After a "rather lengthy recess," defense counsel advised that "we're resolved to the point . . . that we can continue now." Id. at 21-22. Petitioner did not unequivocally request to proceed pro se during the preliminary hearing.

On the second day of trial, after the jury had been selected and sworn, defense counsel advised the trial judge outside the presence of the jury that he was having trouble complying with Petitioner's requests and that "if he's willing to do it, I will sit there as co-counsel [and] from now on, he takes over." See Dkt. # 15-3, Tr. Vol. II at 62. The trial judge proceeded to ask Petitioner if he wished to represent himself. Id. at 63. Petitioner responded "I'm willing to do that." Id. After explaining that the time to make the decision regarding self-representation had passed, and finding that Petitioner's dissatisfaction with the questions being asked by defense counsel was an insufficient reason to allow counsel to withdraw, the trial judge ruled that the trial would proceed with trial counsel representing Petitioner. Id. at 65-70.

That record supports the OCCA's factual finding that Petitioner's statement regarding his willingness to proceed pro se was untimely. Although the record confirms that Petitioner and his attorney had a contentious relationship, Petitioner never clearly expressed a desire to represent himself. On the second day of trial, after defense counsel advised the trial judge that he would be willing to serve as stand-by counsel if Petitioner desired to proceed pro se, Petitioner stated that he was "willing" to take over and have Mr. Conatser serve as "co-counsel." Id. at 62-63. As

determined by the OCCA, Petitioner's statement does not serve as an unequivocal, timely request for self-representation. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2). The request for habeas corpus relief on this part of Ground 2 is denied.

### b. Ineffective assistance of trial counsel (part of Ground 2)

In the second part of Ground 2, Petitioner alleges that he was denied effective assistance of counsel. See Dkt. # 5 at 13. In support of this claim, Petitioner cites to his direct appeal brief where, in proposition 4, Petitioner identified seven instances of ineffective assistance of trial counsel. See Dkt. # 14-1 at 33-42. The OCCA applied the standards set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and denied relief. See Dkt. # 14-3 at 8-12.

Petitioner is not entitled to habeas relief on his claim of ineffective assistance of trial counsel unless he demonstrates that the OCCA's adjudication was contrary to, or an unreasonable application of, Strickland. Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Id. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be

highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112. If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Pinholster, 563 U.S. at 190 (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

### i. Delay in acting on conflict

First, Petitioner claims that his trial counsel provided ineffective assistance when he waited until the second day of trial to advise the trial judge of the ongoing conflict between himself and his client. See Dkt. # 5 at 23. The OCCA denied relief on this claim, as follows:

> Evitt claims first that trial counsel was ineffective in waiting until the second day of trial to act on the conflict that existed between them and that delay resulted in Evitt being denied his Sixth Amendment right to represent himself at trial. From his colloquy with the trial judge it is apparent that Evitt's dissatisfaction with counsel's conduct of the trial proceedings arose from questions that were not asked on cross-examination, questions that Evitt believed were relevant and should have been asked. In this appeal, Evitt does not identify the omitted questions, nor does he identify how omission of those questions prejudiced his defense. Assuming for the

sake of argument then that the timing of defense counsel's announcement to the court of his and Evitt's disagreement over cross-examination questions led to the denial of Evitt's right to self-representation as untimely, Evitt provides this Court with no basis to conclude that but for some unspecified unasked cross-examination questions, there is a reasonable probability that the outcome of the trial would have been different. Evitt fails, therefore, to show prejudice arising from counsel's alleged error and as a result fails to show that trial counsel was ineffective.

See Dkt. # 14-3 at 8-9.

The record confirms that on the second day of trial, Petitioner had a conflict with defense counsel because counsel did not ask cross-examination questions specifically requested by Petitioner. Petitioner advised the trial judge that, "[i]t's nothing personal. It's nothing that he's intentionally doing. It's not like competency. There's just been a couple questions missed that I felt are very relevant to my case and I brought them up and somehow we missed our opportunity to ask them." See Dkt. # 15-3, Tr. Vol. II at 67. When the trial judge asked Petitioner to give an example of an omitted question, Petitioner cited a question concerning differing statements given by A.G. as reflected in the police reports. Id. at 69. The trial judge ruled that the line of questions described by Petitioner were insufficient "to say that Mr. Conatser should be allowed out of this case right now, [and] that you should be allowed to proceed to represent yourself." Id. at 69-70.

However, in rasing this claim on direct appeal, Petitioner failed to inform the OCCA what questions should have been asked. See Dkt. # 14-1 at 11, 25, 27. As a result, the OCCA determined that Petitioner failed to satisfy the prejudice prong of Strickland. See Dkt. # 14-3 at 9. In his habeas petition, Petitioner points to nothing suggesting that even if counsel had sought to withdraw earlier and Petitioner been allowed to represent himself, the result of the proceeding would have been different. Therefore, Petitioner has not shown that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the

Supreme Court. Petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel.

### ii. Bifurcated proceeding

Next, Petitioner claims that his trial counsel provided ineffective assistance when counsel failed to understand or explain the bifurcated proceeding. See Dkt. # 5 at 23-24. The OCCA denied relief on this claim, as follows:

> Evitt claims next that trial counsel was ineffective for failing to understand or explain to him the bifurcated nature of the trial proceedings he was facing. Even assuming that Evitt's assertions is correct, he fails to show how this alleged deficient performance affected the outcome of the trial. Specifically, Evitt provides no argument or evidence of how his or his attorney's alleged lack of understanding of bifurcation adversely affected his trial strategy, planning, or his decision to testify. To be entitled to relief on an ineffective assistance of counsel claim, it is the appellant's burden to demonstrate prejudice from counsel's alleged error. Evitt fails to meet that burden here.

See Dkt. # 14-3 at 9.

The record demonstrates that, during the first day of trial, the trial judge explained to Petitioner, outside the presence of the jury, that a bifurcated trial would avoid Petitioner being prejudiced during the first stage by the jury learning of his prior felony conviction supporting the charge of Possession of a Firearm, After Former Conviction of a Felony. See Dkt. # 15-2, Tr. Vol. I at 182-83. The trial judge further explained that if Petitioner chose to testify, the State would be allowed to inquire as to any prior convictions and the need for a second stage would be eliminated. Id. at 183. Petitioner was allowed to ask questions which the judge patiently answered. Id. at 184-86. Petitioner assured the trial judge that he understood his choices with regard to a bifurcated trial. Id. at 185-87.

Even if trial counsel failed to understand or explain the bifurcated proceeding, the record cited above demonstrates that the trial judge explained the process to Petitioner and that Petitioner stated more than once that he understood. Therefore, Petitioner has failed to demonstrate that he suffered prejudice with regard to counsel's alleged shortcoming. Petitioner has not shown that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel.

### iii. Hearsay rule

Petitioner also claims that his trial counsel provided ineffective assistance because counsel failed to understand the hearsay rule. See Dkt. # 5 at 24-29. The OCCA denied relief on this claim, as follows:

> Evitt also claims that trial counsel was ineffective for failing to understand the hearsay rule and points to defense counsel's unsuccessful attempt to introduce a statement from a non-testifying witness made to a police officer and recorded in the officer's report. It is obvious from the trial transcript that the statement defense counsel was trying to elicit from the officer was inadmissible hearsay. A better understanding of the hearsay rule by defense counsel would not have transformed the statement into admissible evidence even if it is assumed that counsel failed to understand the hearsay rule as Evitt alleges. Consequently, the outcome of the proceeding would remain unchanged (i.e., the statement would remain excluded as inadmissible hearsay). Evitt fails to show prejudice from this alleged error. Counsel was not ineffective.

See Dkt. # 14-3 at 10.

The record demonstrates that the testimony sought to be elicited by defense counsel was inadmissible hearsay and supports the OCCA's conclusion that, even if defense counsel had a better understanding of the hearsay rule, the statement would not have been admissible. As a result, Petitioner has not demonstrated that he was prejudiced by counsel's performance. Petitioner has not

shown that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel.

### iv. Lack of foundation for admission of exhibits

Petitioner further claims that his trial counsel provided ineffective assistance when he failed to lay a proper foundation for admission of Petitioner's exhibits. See Dkt. # 5 at 26. The OCCA denied relief on this claim, as follows:

> Evitt claims that trial counsel was ineffective for failing to lay a proper foundation when he attempted to enter Defense Exhibits 1, 2, and 8 into evidence. The record shows that trial counsel did indeed have foundational difficulties with these exhibits, but the record also shows that counsel eventually laid a proper foundation and each exhibit was then admitted into evidence. Because counsel did eventually lay the proper foundations and the exhibits were admitted into evidence as part of Evitt's defense, it is not apparent how Evitt was prejudiced by trial counsel's alleged deficient performance of failing to lay a proper foundation for the exhibits. Counsel was not ineffective.

See Dkt. # 14-3 at 10.

Again, the record supports the OCCA's finding that defense exhibits were eventually admitted into evidence. See Dkt. # 15-3, Tr. Vol. II at 246-47; Dkt. # 15-4, Tr. Vol. III at 18-20. Thus, Petitioner cannot demonstrate that he suffered prejudice as a result of defense counsel's initial failure to lay a proper foundation for admission of the exhibits. Petitioner has not shown that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel.

### v. Need for guidance from trial judge

Petitioner claims that his trial counsel provided ineffective assistance when he asked the trial judge for guidance in admitting testimony. See Dkt. # 5 at 26. On direct appeal, Petitioner gave two examples of trial counsel's need for guidance: first, when counsel asked the trial judge how to proceed with putting Mr. Evitt's biographical information into evidence, and second, when after an objection by the prosecution had been sustained, counsel stated, "[a]ll right. Fine. Just tell me where I'm going." See Dkt. # 14-1 at 38 (citing Dkt. # 15-4, Tr. Vol. III at 9, 107). The OCCA denied relief on this claim, as follows:

> Evitt claims that trial counsel was ineffective for asking the trial judge for guidance on how to enter some unspecified biographical information about him (Evitt) into evidence during Evitt's testimony. A review of the trial transcript shows, however, that after consulting with the judge, trial counsel never attempted to elicit biographical information from Evitt, and Evitt does not identify what specific biographical information trial counsel inquired about. Without any indication of what information was at issue, it is impossible to determine whether trial counsel's mere procedural inquiry of the judge was performance that fell below an objective standard of reasonableness, and it is certainly impossible to determine whether Evitt's defense was prejudiced by the inquiry. Evitt fails to show that trial counsel was ineffective.

See Dkt. # 14-3 at 11.

The record demonstrates that both counsel's request for guidance and his comment "[j]ust tell me where I'm going," took place at the bench, and thus the jury presumably was unaware of counsel's inquiry or apparent confusion. See Dkt. # 15-4, Tr. Vol. III at 10, 107. Furthermore, in his habeas petition, Petitioner fails to identify any biographical information that was not presented that would have changed the outcome of the trial. Thus, even if defense counsel performed deficiently in asking the trial judge for guidance or making comments at the bench, Petitioner has failed to satisfy the prejudice prong of Strickland. Petitioner has not shown that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established

federal law as determined by the Supreme Court. Petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel.

### vi.  Hearing impairment

Petitioner also claims that his trial counsel provided ineffective assistance because he suffered from hearing impairment. <u>See</u> Dkt. # 5 at 28.  The OCCA denied relief on this claim, as follows:

> Evitt also claims that trial counsel was ineffective for being hearing impaired. To support this claim, Evitt refers to: (1) an instance where the trial judge expressed a concern that jurors were becoming frustrated by the repetition being caused by defense counsel asking some of the same questions as just asked by the prosecutor; (2) an instance where trial counsel asked the prosecutor to have a witness speak up so he (trial counsel ) could hear him; and (3) several instances where trial counsel mixed up the names of certain witnesses.  While the record cited by Evitt confirms that these incidents occurred Evitt fails to show how he was actually prejudiced by these allegedly hearing-related actions of counsel, and prejudice is not obvious from the record.  Evitt fails to show that trial counsel was ineffective.

<u>See</u> Dkt. # 14-3 at 11.

Again, the record supports the OCCA's conclusion that, while incidents identified by Petitioner did in fact occur, Petitioner has not explained how he suffered prejudice.  Petitioner has not shown that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel.

### vii.  Failure to seek dismissal and to object

Lastly, Petitioner claims that trial counsel provided ineffective assistance when he failed to seek dismissal of one of the firearms counts based on double punishment and failed to object to prosecutorial misconduct and jury instructions.  <u>See</u> Dkt. # 5 at 26-28.  The OCCA denied relief on these claims, as follows:

Finally, Evitt claims that trial counsel was ineffective for failing to: (1) argue for dismissal of one of the firearms counts on double punishment grounds; (2) object to prosecutorial misconduct during closing argument; and (3) failing to object to the lack of a jury instruction on the lack of knowledge defense. As discussed above (and below), there is no merit to Evitt's double punishment, prosecutorial misconduct, and jury instruction claims. Trial counsel was not ineffective for not raising these issues. *See Hatch v. State*, 1983 OK CR 47, ¶ 9, 662 P.2d 1377, 1381 ("[f]ailure to press meritless claims do [sic] not constitute ineffective assistance of counsel").

<u>See</u> Dkt. # 14-3 at 12.

In this habeas action, Petitioner does not raise claims of double punishment or instructional error. Furthermore, he provides no facts supporting his claim of ineffective assistance of counsel relative to these issues. As a result, he is not entitled to habeas corpus relief on those claims. <u>See Humphreys v. Gibson</u>, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001) (noting that conclusory allegations were insufficient to warrant habeas relief on claim of ineffective assistance of counsel). As discussed below, Petitioner's claim of prosecutorial misconduct lacks merit. Petitioner fails to satisfy the prejudice prong of <u>Strickland</u> and has not shown that the OCCA's adjudication of these claims was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Petitioner is not entitled to habeas relief on these claims of ineffective assistance of counsel.

### c. Prosecutorial misconduct (part of Ground 3)

In the first part of his third ground of error, Petitioner alleges that the prosecutor made improper comments during his closing argument. <u>See</u> Dkt. # 5 at 31. In support of this claim, Petitioner cites his brief filed on direct appeal where he alleged that prosecutorial misconduct deprived him of a fair trial and caused the jury to render excessive sentences. <u>See</u> Dkt. # 14-1 at 43-47. Specifically, Petitioner complained that the prosecutor questioned Petitioner's credibility and

invoked societal alarm.  Id.  The OCCA reviewed for plain error and denied relief on this claim,

finding as follows:

> Evitt raises several claims of prosecutorial misconduct related to comments
> made by the prosecutor during closing argument.  Evitt did not object to any of the
> complained-of comments at trial.  The claims are therefore waived and reviewed
> only for plain error. *Wackerly v. State* 2000 OK CR 15, ¶ 29, 12 P.3d 1, 12.  We find
> no plain error.  *See Hogan*, 2006 OK CR 19, ¶ 39, 139 P.3d 907 ("The first step in
> plain error analysis is to determine whether error occurred.").

See Dkt. # 14-3 at 12.

Prosecutorial misconduct, if it occurs, can "create constitutional error in one of two ways."

Matthews v. Workman, 577 F.3d 1175, 1186 (10th Cir. 2009).  "First, prosecutorial misconduct can

prejudice 'a specific right, such as the privilege against compulsory self-incrimination, as to amount

to a denial of that right.'"  Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

When this occurs, a petitioner need not show that his entire trial was rendered fundamentally unfair.

See Dodd v. Trammell, 753 F.3d 971, 990 (10th Cir. 2013).  "Second, even if the prosecutor's

improper remarks do not impact a specific constitutional right, they may still create reversible error

if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due

process.'"  Matthews, 577 F.3d at 1186 (quoting Donnelly, 416 U.S. at 643).  Under this test,

prosecutorial comments violate due process only when the prosecutor's conduct is so egregious in

the context of the entire trial that it renders the trial fundamentally unfair.  Donnelly, 416 U.S. at

642-48.  To  satisfy that test, a petitioner must demonstrate either persistent and pronounced

misconduct or that the evidence was so insubstantial that absent the remarks, a conviction probably

would not have occurred.  Thomas v. Cowley, 1991 WL 151773 at *9 (10th Cir. Aug. 8, 1991) (unpublished).[4]

In this case, the record reflects that defense counsel did not object to the prosecutor's remarks.  As a result the OCCA reviewed for plain error.  Oklahoma defines plain error as "an error which goes to the foundation of the case, or which takes from a defendant a right essential to his defense," Simpson v. State, 876 P.2d 690, 698 (Okla. Crim. App. 1994), and "impinges on the fundamental fairness of trial."  Cleary v. State, 942 P.2d 736, 753 (Okla. Crim. App. 1997).  "Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process."  Hancock v. Trammell, 798 F.3d 1002, 1011 (10th Cir. 2015); Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir.  2005) (finding "no practical distinction between the formulations of plain error . . . and the federal due-process test, which requires reversal when error so infused the trial with unfairness as to deny due process of law" (citation and internal quotation marks omitted)).  When the OCCA rejects a claim "under the plain-error standard, the decision effectively disallow[s] the possibility of a due process violation."  Hancock, 798 F.3d at 1011.

### i. Questioning Petitioner's credibility

Petitioner complains that the prosecutor improperly commented on Petitioner's lack of credibility.  See Dkt. # 5 at 32-33.  The record demonstrates that Petitioner testified in his own defense at trial.  See Dkt. # 15-4, Tr. Vol. III at 11.  In contrast to the evidence presented by the State, Petitioner told the jury that, on May 7, 2010,  he was attacked by four (4) men: A.G. and three others.  See id. at 24-31.  Petitioner denied having a weapon.  Id. at 32.  He also denied breaking

---

[4]This and all other unpublished opinions herein are not precedential but are cited for their persuasive value.  See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

open the door of A.G.'s apartment and claimed he was beaten, kicked, and hit twice in the back of the head.  Id. at 33, 37.  Petitioner testified that, as a result of the attack, he "blacked out" several times.  Id. at 40, 48.  Petitioner claimed that the young men who attacked him lied "to cover their tracks" and to explain the damage to the apartment.  Id. at 94.  During closing argument, the prosecutor characterized Petitioner's version of the events as "spectacular," id. at 142-43, and pointed out that while Petitioner had the ability to remember some details of the incident, he claimed he could not remember things he did not want to talk about because he was "knocked out," id. at 143.  The prosecutor also reminded the jury that the paramedic who provided Petitioner's initial medical treatment testified that Petitioner was not unconscious.  Id. at 144.  The prosecutor asked the jury to consider what Petitioner had at stake when considering his credibility.  Id. at 143.

Upon review of the trial record, the Court agrees with the OCCA that the prosecutor's comments did not deprive Petitioner of a fundamentally fair trial.  In United States v. Jones, 468 F.3d 704, 707 (10th Cir. 2006), the Tenth Circuit held that "presenting evidence of [the witness's] obligation or motivation to testify truthfully is unobjectionable."  See also Thornburg, 422 F.3d at 1132 (concluding that "it is not improper for a prosecutor to direct the jury's attention to evidence that tends to enhance or diminish a witness's credibility").  Here, the prosecutor asked the jury to consider Petitioner's motives for his testimony and his comments regarding Petitioner's credibility were not improper.

### ii. Invoking fear/societal alarm

Petitioner also complains that the prosecutor improperly invoked fear and societal alarm during closing argument.  See Dkt. # 5 at 34.  The prosecutor argued as follows:

> [t]his is your community.  This is where you all live.  You have a stake in this community.  You're brought together today as a body.  You can send a message.

> You can tell Mr. Evitt that this type of behavior will not be tolerated in Washington County. It's not what you want in your town. It's not what you want in your community.

See Dkt. # 15-4, Tr. Vol. III at 149.

"While 'improper appeals to societal alarm' and requests for 'vengeance for the community to set an example' are unwarranted, they are also not the type of comments that the Supreme Court has suggested might amount to a due process violation." Bracheen v. Reynolds, 41 F.3d 1343, 1356 (10th Cir. 1994) (quoting Darden v. Wainwright, 477 U.S. 168, 181-82 (1986)); see also Wright v. Jones, 359 F. App'x 49, 54 (10th Cir. 2010) (unpublished). As stated above, prosecutorial misconduct warrants federal habeas relief only if the conduct "is so egregious as to render the entire proceedings against the defendant fundamentally unfair." Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999) (citing Donnelly, 416 U.S. at 642-48).

After examining the prosecutor's statement in the context of the entire trial, the Court cannot say that the statement "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002). The State presented several witnesses who testified that Petitioner kicked in the door and fired four (4) shots into A.G.'s apartment. Six people were present in the apartment at the time, including A.G.'s two younger sisters, ages 5 and 3 years old. A witness testified that, after entering the apartment, Petitioner used the gun to hit him on the top of his head and then in the eye. After A.G. and his friends confiscated Petitioner's gun, Petitioner had to be physically removed from A.G.'s apartment by a friend. In light of the evidence presented at trial, the challenged comments by the prosecutor did not deprive Petitioner of due process.

Petitioner fails to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Petitioner is not entitled to habeas relief on his claims of prosecutorial misconduct.

### d. Excessive sentences (part of Ground 3)

As the second part of Ground 3, Petitioner claims that his sentences are excessive. See Dkt. # 5 at 31. In support of this claim, Petitioner cites his direct appeal brief where he argued that his sentences are excessive because, although the sentences were within the statutory range, the trial judge ordered the sentences for Counts 1 and 2 to run consecutively to each other. See Dkt. # 14-1 at 49. The trial judge also order the sixteen (16) year accelerated sentences in Case No. CF-2005-531 to run concurrently with the sentences in CF-2010-191. Id. The OCCA denied relief on this claim, finding that the sentences received did not reflect an abuse of discretion by the trial judge. See Dkt. # 14-3 at 13.

A habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000). Federal habeas review generally ends "once we determine the sentence is within the limitation set by statute." Id. In this case, Petitioner's sentences were within the sentencing ranges for the crimes charged, as established under Oklahoma law. In addition, the Tenth Circuit has stated that "[i]t is well-established that courts may constitutionally impose consecutive sentences for completely distinct and separate offenses." Woodberry v. Hannigan, 37 F. App'x 404, 406 (10th Cir. 2002) (unpublished). There is no basis for habeas relief based on the

length of sentences received by Petitioner. Habeas corpus relief on the second part of Ground 3 is denied.

### e. Cumulative error (Ground 4)

As his fourth proposition of error, Petitioner claims that the cumulative effect of the errors alleged herein resulted in a fundamentally unfair trial. See Dkt. # 5 at 41. Petitioner raised this claim on direct appeal. See Dkt. # 14-1 at 51. The OCCA denied relief, citing Dodd v. State, 100 P.3d 1017, 1051 (Okla. Crim. App. 2004) ("[t]his Court has repeatedly held that a cumulative error argument has no merit when this Court fails to sustain any of the other errors raised by Appellant"), and ruling that "[h]aving found no merit to any of Evitt's other claims of error, we deny this claim." See Dkt. # 14-3 at 13.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (citation and internal quotation marks omitted). The Tenth Circuit has held that a cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Additionally, only federal constitutional errors can be aggregated to permit relief on habeas review. Matthews, 577 F.3d at 1195. Cumulative impact of non-errors is not part of the analysis. Le, 311 F.3d at 1023 (citation omitted). "[T]he task merely consists of aggregat[ing] all the errors that have been found to be harmless and analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be

determined to be harmless." <u>Grant v. Trammell</u>, 727 F.3d 1006, 1025 (10th Cir. 2013) (citation and internal quotation marks omitted).

Here, the Court has not found two or more harmless errors during Petitioner's trial. As a result, there is no basis for a cumulative error analysis. Petitioner has not shown that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Habeas relief is denied on Ground 4.

### Certificate of Appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that this Court's application of AEDPA standards to the OCCA's decision is debatable amongst jurists of reason. <u>See</u> <u>Dockins v. Hines</u>, 374 F.3d 935, 937-38 (10th Cir. 2004).

Furthermore, nothing suggests that the Court's procedural ruling resulting in the dismissal of Ground 1 as time barred is debatable or incorrect. A certificate of appealability shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.    The Clerk of Court shall note the substitution of Tracy McCollum, Warden, in place of Robert C. Patton, Director, as party respondent.

2.    The petition for writ of habeas corpus (Dkt. # 5) is **denied**, as follows:

   a.    Ground 1 of the petition is **dismissed with prejudice** as time barred.

   b.    Grounds 2, 3, and 4 of the petition are **denied**.

3.    A certificate of appealability is **denied**.

4.    A separate Judgment shall be entered in this matter.

**DATED** this 19th day of June, 2017.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma